UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

vs.

NO. 17-CR-20406

HON. PAUL D. BORMAN

D-1   JEROME DURDEN,

Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Matthew Schneider, United States Attorney, and David A. Gardey and Erin S. Shaw, Assistant United States Attorneys, respectfully submits this sentencing memorandum regarding defendant JEROME DURDEN, who is scheduled to be sentenced on November 7, 2018.

Durden is engaged in ongoing cooperation in the criminal investigation of other individuals and entities concerning illegal payments made by FCA and its executives to the UAW and its union officials. At this time the United States recommends a custodial sentence of 15 months. If Durden honors his Cooperation Agreement and continues to provide substantial assistance in the investigation and prosecution of other individuals and entities, there will be an opportunity for a

1

sentencing reduction pursuant to Federal Rule of Criminal Procedure 35(b)(1). The United States strongly recommends a delayed reporting date to allow Durden to continue his ongoing cooperation and avail himself of this potential opportunity for a sentencing reduction in the future.

## I.   BACKGROUND

Durden was a financial analyst in the FCA corporate accounting department. In 2008, FCA assigned Durden to act as the controller of the UAW-Chrysler Skill Development and Training Program ("NTC"). During Durden's tenure as NTC controller, FCA and its executives gave millions of dollars to UAW officials and the union itself in order to buy labor peace. The NTC was an instrumentality of that criminal conspiracy, used as a method to conceal illegal Taft-Hartley payments under the benevolent guise of training workers and ensuring their health and safety.

As a tax-exempt organization, the NTC was required to file a true and accurate IRS Form 990 return for each relevant tax year disclosing compensation to current and former trustees, directors, officers and keys employees; disclosing transfers between itself and related entities; and disclosing business transactions with interested persons. In his role as the NTC controller, Durden prepared, signed, and filed a number of misleading federal tax returns on the NTC's behalf that concealed the prohibited Taft-Hartley conduct taking place under its roof, and enabled the NTC

to preserve its tax-exempt status. The Information expressly names the NTC as one of Durden's coconspirators. *See* Information, page 6, ¶2.

Durden served as Treasurer for another tax-exempt organization, the Leave the Light On Foundation ("LTLOF"). The stated purpose of the LTLOF was to raise money to be used for charitable and community activities, but in reality, the LTLOF was used to direct additional prohibited payments to UAW Vice President General Holiefield and his mistress, Monica Morgan. Holiefield selected the members of the LTLOF Board and controlled all LTLOF funds and assets. Between 2009 and 2014, more than $386,400 was transferred from the NTC to the LTLOF. *See id.*, page 4, ¶11. Similar to his role with the NTC, Durden prepared, signed, and filed federal tax returns on behalf of the LTLOF that failed to report payments made to Holiefield and Morgan.

## II. SENTENCING GUIDELINE CALCULATIONS AND RELEVANT §3553(a) FACTORS

### A. §3553(a)(1): Nature of the Offense and History and Characteristics of the Defendant

Durden was charged with, and stands convicted of, tax offenses. As the former controller for the NTC, Durden conspired to defraud the United States through the NTC and the LTLOF, two tax exempt organizations.

Durden filed false tax returns on the NTC's behalf in an effort to conceal various illegal Taft-Hartley payments funnelled through the NTC. *See* Rule 11 Agreement at page 3, ¶1. He also used the LTLOF as a conduit to funnel funds to Holiefield and Morgan. *See* Rule 11 Agreement at page 3, ¶2. The Probation Department has succinctly summarized Durden's offense conduct as to Count One of the Information follows:

> Between 2009 and 2015, DURDEN agreed and conspired with Iacobelli, Holiefield, Morgan, the NTC, and the LTLOF to mislead [the] IRS from collecting taxes. Ultimately, authorities determined the co-conspirators caused the NTC to engage in hundreds of thousands of dollars in business transactions that were omitted from the IRS Form 990 returns filed by the NTC and LTLOF. The defendant and his co-conspirators transferred hundreds of thousands of dollars in funds from the LTLOF to Holiefield through Morgan and companies owned or controlled by her.

PSR at ¶12. Count Two relates to Durden's willful failure to file a personal 2013 IRS 1040 tax return.

Durden is highly educated, with a bachelor's degree from GMI and an MBA from Columbia University in New York. *See* PSR at ¶47. He began his career at FCA's predecessor entity in 1985. *See id.* at ¶51.

As noted, the crime of conviction is a tax violation. However, it is important to also appreciate the various efforts to use "the UAW-Chrysler Training Center as a conduit to conceal over a million dollars in prohibited payments and things of value

4

paid directly and indirectly to UAW Vice President General Holiefield and other UAW officials," (Rule 11 Agreement, page 4, ¶3), because they provide a backdrop for understanding why the misleading NTC tax returns were filed in the first place.

FCA provides funding for the NTC according to a formula that multiplied the hours worked by UAW-represented FCA employees against a tiered rate for regular and overtime hours. FCA earmarked funds for the NTC tied to this hours-worked formula, and the NTC received disbursements of these FCA funds through an expense-based system. The NTC typically carried a balance in its operating account sufficient to fulfill daily obligations. Periodically, when its operating account balance decreased, the NTC would submit a draw request to FCA. The draw request functioned as a reimbursement: the amount of the request matched the previous period's spending by the NTC. NTC draw requests were prepared by Durden and approved first by Iacobelli, then by FCA's finance personnel, and ultimately, by FCA's CFO. Once approved by the CFO, a transfer of funds was initiated from FCA's general cash account into the NTC's main operating account. Thus, Durden's preparation and submission of NTC draw requests was the first step in the NTC's funding process. When prohibited Taft-Hartley payments were made, Durden sought reimbursement for the NTC from FCA through this draw system.

If these illegal payments and related party transactions had been disclosed on the NTC's Form 990s, the IRS would have been on notice that the NTC was involved in suspicious conduct, the NTC's tax-exempt status likely would have been in jeopardy, and the Taft-Hartley conspiracy may have come to light. Thus, Durden filed false returns on the NTC's behalf to conceal what was really happening from the IRS and other government investigators.

### B.  §3553(a)(4):  Advisory Guideline Range

The parties agree that the guideline range is 30 to 37 months. The Probation Department recommends application of 2 additional points for abuse of a position of public or private trust or use of a special skill pursuant to U.S.S.G. §3B1.3. *See* PSR at ¶24. The United States does not believe that this adjustment applies to this defendant.

"In order for the abuse of a position of trust enhancement to be applied to a defendant, the evidence must show that the defendant's position with the victim of the offense significantly facilitated the commission of the offense." *United States v. Moored*, 997 F.3d 139, 145 (6th Cir. 1993). The victim of Durden's offense is the IRS. As the Sixth Circuit noted in *United States v. May*, 568 F.3d 597, 604 (6th Cir. 2009), "there is not an abuse of trust at all because May was not in a position of trust relative to the IRS." The same is true here.

The evidence does not support an argument that Durden abused a position of trust as to the NTC. First, the NTC is not a victim of Durden's tax offense. Second, the NTC was Durden's coconspirator; Durden acted within his authority as controller in filing false tax returns on the NTC's behalf and for the NTC's benefit. As noted above, these misleading tax returns concealed illegal payments funneled through the NTC to UAW officials by FCA executives, as well as several related party transactions between the NTC and the LTLOF.

The United States stands by its position as set forth in the Rule 11 Agreement, and recommends a guideline range of 30 to 37 months.

### C.  §3553(a)(2)(A) & (B): Seriousness of the Offense, Promoting Respect for Law, Providing Just Punishment and Deterrence

Durden's tax conviction is a serious offense. As Justice Holmes famously said in *Compania Gen. de Tabacos de Filipnias v. Collector of Internal Revenue*, 275, U.S. 87, 100 (1927) (Holmes, J., dissenting), "taxes are what we pay for civilized society." *United States v. Miner*, 774 F.3d 336, 339 (6th Cir. 2014) (citing Justice Holmes). Durden's efforts in filing fraudulent tax returns on behalf of the NTC are additionally serious because the false returns were filed to conceal a broader crime of which both Durden and the NTC as an entity were part. Durden's

7

concealment also demonstrates a profound lack of respect for the law. A custodial sentence will provide just punishment for this offense.

The United States agrees with the defendant that he is unlikely to reoffend and that specific deterrence is not at the forefront of this sentencing. General deterrence, however, is important. Tax crimes are commonplace; tax payers and tax preparers should be on notice that they will face significant punishment if they lie to the IRS.

### D.  §3553(a)(7): Restitution

Durden owes restitution to the United States Treasury in the amount of $8,811.16 in connection with his failure to file his 2013 personal return.

On October 26, 2018, the NTC filed a motion for recognition of crime victim status and for restitution. The United States opposes the NTC's motion, and will respond in the miscellaneous case that was opened to address it: 18-51553.

### III.  CONCLUSION

Durden filed misleading tax returns with the IRS on behalf of the NTC in order to conceal an ongoing Taft-Hartley conspiracy of which the NTC was a critical part. This troubling conduct is mitigated by the substantial assistance that Durden has provided in the investigation and prosecution of others that is described elsewhere. Durden's cooperation is expected to continue. Accordingly, the United States recommends a sentence of 15 months in custody, with a delayed report date

8

so that Durden may have the opportunity to benefit from a Rule 35 reduction as the case continues to develop as to other individuals and entities under investigation.

MATTHEW SCHNEIDER
United States Attorney

*s/Erin S. Shaw*
DAVID A. GARDEY
ERIN S. SHAW
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9100
David.Gardey@usdoj.gov
Erin.Shaw@usdoj.gov

Dated: October 31, 2018

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 31, 2018, I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF system, which will send notification of such filing to the following:

Counsel of Record for Jerome Durden

*s/Erin S. Shaw*
ERIN S. SHAW
Assistant United States Attorney

Dated: October 31, 2018